# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1845

_____

United States of America,

Appellee,

v.

Victor Hugo Guel-Contreras,

Appellant.

_____

No. 06-2165

_____

United States of America,

Appellee,

v.

Sergio Ramirez-Gomez,

Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeals from the United States
District Court for the
Northern District of Iowa.

Submitted: October 17, 2006
Filed: November 16, 2006

_____

Before WOLLMAN, RILEY and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Victor Hugo Guel-Contreras appeals his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. Guel-Contreras challenges the district court's[1] denial of his motions to suppress, for judgment of acquittal and for a new trial. Sergio Ramirez-Gomez pled guilty to distribution of cocaine and possession of a fraudulent immigration document, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1546(a). Ramirez-Gomez challenges his sentence. We reject their arguments and affirm Guel-Contreras's conviction and Ramirez-Gomez's sentence.

I.    BACKGROUND

Sergio Ramirez-Gomez is the uncle and was the roommate of Victor Hugo Guel-Contreras. Both are citizens of Mexico, and both entered this country illegally. In early 2005, officers with the Iowa Division of Narcotics Enforcement ("DNE") received information regarding a cocaine dealer in the Postville, Iowa, area named "Crazy," later determined to be Juan Jose Gonzalez-Orosco. On January 21, 2005, DNE Special Agent Daryl Simmons arranged to and did purchase one ounce of cocaine from Gonzalez-Orosco. On February 1, 2005, Special Agent Simmons made

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

arrangements with Gonzalez-Orosco for a second sale. This time Special Agent Simmons purchased four ounces of cocaine from Gonzalez-Orosco's co-conspirator, Ramirez-Gomez.

A third sale was arranged for the night of February 15, 2005. Shortly after midnight when Ramirez-Gomez arrived at a pre-determined location, Special Agent Simmons approached Ramirez-Gomez's vehicle. Ramirez-Gomez was in the driver's seat, and Guel-Contreras was in the passenger seat. Upon Special Agent Simmons's request, Ramirez-Gomez showed him the cocaine, at which time Special Agent Simmons signaled awaiting officers. Ramirez-Gomez and Guel-Contreras were subsequently arrested. The officers found 189.2 grams of cocaine on Ramirez-Gomez's person and 0.25 grams of cocaine wrapped in a twenty-dollar bill on Guel-Contreras's person.

Following the arrests, officers took Guel-Contreras to a nearby hotel room where Agent Michael Vail of the Bureau of Immigration and Customs Enforcement ("ICE") asked him background questions to determine his immigration status. According to Agent Vail, who is fluent in Spanish, he then read Guel-Contreras his *Miranda* rights in Spanish, and Guel-Contreras agreed to answer Agent Vail's questions regarding the drug deal. Agent Vail also testified that Guel-Contreras signed a Spanish-language Justice Department Advisory of Rights form, which he left in Guel-Contreras's possession and never retrieved from him. Guel-Contreras denies ever receiving the warnings or signing the waiver. Guel-Contreras also denies telling Agent Vail that Ramirez-Gomez gave him the cocaine found on his person.

ICE Agent Chris Cantrell interviewed Ramirez-Gomez in a separate hotel room. Agent Cantrell gave Ramirez-Gomez his *Miranda* rights in Spanish, and Ramirez-Gomez agreed to answer his questions. Ramirez-Gomez told Agent Cantrell that his nephew was there to act as a "lookout" during the drug deal and that he had paid his nephew for his participation by giving him a small amount of cocaine. A

consent search was later executed at the residence shared by Ramirez-Gomez and Guel-Contreras during which officers seized an additional 22.5 grams of cocaine from under Ramirez-Gomez's mattress.

A grand jury returned an indictment charging Ramirez-Gomez, Guel-Contreras and Gonzalez-Orosco with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846.[2] The indictment further charged Ramirez-Gomez with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and both he and Guel-Contreras with possession of a fraudulent immigration document in violation of 18 U.S.C. § 1546(a). Prior to trial, Guel-Contreras filed a motion to suppress the statements he made to law enforcement following his arrest on the grounds that they were obtained in violation of his *Miranda* rights. An evidentiary hearing on the motion to suppress was held, after which the magistrate judge recommended that it be denied. The district court adopted the magistrate's report and recommendation and denied the motion.

Ramirez-Gomez pled guilty to distribution of cocaine and possession of a fraudulent immigration document. Ramirez-Gomez was given use immunity to testify at the trial of his nephew, Guel-Contreras. During his nephew's trial, Ramirez-Gomez testified that, contrary to his prior statements, he did not give Guel-Contreras any cocaine on the night of February 15, 2005, and that Guel-Contreras had no involvement in the drug deal that night. The Government then called Agent Cantrell as an impeachment witness who recounted Ramirez-Gomez's statements as they were originally given to him. Guel-Contreras testified in his own defense consistent with Ramirez-Gomez's testimony. The jury convicted Guel-Contreras of possession of a fraudulent immigration document, which he did not contest at trial, and conspiracy to distribute cocaine. Subsequently Guel-Contreras filed motions for judgment of acquittal and a new trial with respect to the conspiracy charge, both of which the district court denied. On March 17, 2006, the district court sentenced Guel-Contreras to 33 months' imprisonment.

---

[2]Gonzalez-Orosco pled guilty and did not appeal.

Ramirez-Gomez's sentencing was held on April 21, 2006. Ramirez-Gomez objected to the pre-sentencing report's recommendation that a U.S.S.G. § 3C1.1 obstruction of justice enhancement apply and that a U.S.S.G. § 3E1.1 acceptance of responsibility reduction not apply. After a hearing, the district court determined that Ramirez-Gomez committed perjury at Guel-Contreras's trial and found that, as a result, the obstruction of justice enhancement would apply and the acceptance of responsibility reduction would not. The district court sentenced Ramirez-Gomez to 77 months' imprisonment.

On appeal, Guel-Contreras challenges the district court's denial of his motions to suppress, for judgment of acquittal and for a new trial with respect to the conspiracy conviction. Ramirez-Gomez challenges his sentence.

## II.    DISCUSSION

### A.    Victor Hugo Guel-Contreras's Conviction

Where a district court denies a motion to suppress statements, we review its factual findings for clear error. *United States v. Black Bear*, 422 F.3d 658, 661 (8th Cir. 2005). Guel-Contreras contends that the district court erred in denying his motion to suppress the statements he made to Agent Vail because Guel-Contreras's testimony at the suppression hearing was credible and Agent Vail's was not.

At the suppression hearing, Agent Vail testified that he read Guel-Contreras his *Miranda* rights in Spanish, that Guel-Contreras signed a Spanish-language Justice Department Advisory of Rights form, and then Guel-Contreras made his statements. Agent Vail was unable to produce the signed waiver form because he had left it with Guel-Contreras on the night of the arrest, which he admitted was a mistake. Guel-Contreras testified that he did not receive *Miranda* rights or sign a waiver before making the incriminating statements.

After the suppression hearing, the district court found that "Agent Vail's testimony was credible and defendant's was not." Guel-Contreras challenges this finding but does not point to any reason why the district court's credibility finding amounts to clear error. He merely argues that his own self-serving testimony was more credible than Agent Vail's. "[C]redibility is a determination for the trier-of-fact, and its assessment is virtually unassailable on appeal." *United States v. Rodriguez*, 414 F.3d 837, 845 (8th Cir. 2005). Without judging the credibility of the witnesses who testified at the suppression hearing, a task best left to the district court, we believe that the district court's findings are supported by the record and thus are not clearly erroneous. We therefore affirm the denial of Guel-Contreras's motion to suppress.

We review de novo the denial of a motion for judgment of acquittal. *United States v. Rice*, 449 F.3d 887, 892 (8th Cir. 2006). "We will overturn a jury verdict based upon insufficiency of the evidence only if it is clear that no reasonable jury could have found guilt beyond a reasonable doubt." *Id.* In evaluating the evidence's sufficiency, we view the evidence in the light most favorable to the Government, resolving evidentiary conflicts in favor of the Government and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. *Id.* Under this stringent standard, a verdict will only be overturned in "rare cases." *Id.*

Guel-Contreras contends that there was insufficient evidence to support the verdict. To convict a defendant on a conspiracy charge, the jury is required to find that: (1) an agreement existed among two or more people to accomplish an illegal purpose; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly joined and participated in the conspiracy. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). The defendant need not have expressly agreed to join the conspiracy, but rather tacit agreement is sufficient. *Id.*

At trial, beyond establishing that Guel-Contreras was present at the scene of a drug deal, testimony also established that he associated and lived with his uncle, a drug dealer, and was an admitted cocaine user. Most importantly, the Government presented evidence that Ramirez-Gomez told law enforcement officers that his nephew was paid with cocaine to serve as a lookout during the drug deal. Viewing the evidence in a light most favorable to the verdict, a reasonable jury could conclude beyond a reasonable doubt that Guel-Contreras conspired to distribute cocaine. We therefore affirm the district court's denial of Guel-Contreras's motion for judgment of acquittal.

We also affirm the district court's denial of Guel-Contreras's motion for a new trial. We review a district court's denial of a motion for a new trial for abuse of discretion. *Rice*, 449 F.3d at 893. Motions for new trials are generally disfavored and will be granted only where a "serious miscarriage of justice may have occurred." *Id.* In his brief, Guel-Contreras does not allege how a miscarriage of justice occurred. Because he combines his arguments for judgment of acquittal and new trial, we assume Guel-Contreras claims that a new trial is warranted because there was insufficient evidence to support his conviction. We have addressed those arguments above, and likewise find no abuse of discretion in the district court's denial of Guel-Contreras's motion for a new trial.

## B. Sergio Ramirez-Gomez's Sentence

A district court applying the U.S.S.G. § 3C1.1 obstruction of justice enhancement for perjury must review the evidence and make a finding, by a preponderance of the evidence,[3] that the defendant gave "false testimony concerning

---

[3]Ramirez-Gomez challenges the post-*Booker* use of the preponderance of the evidence standard for fact-finding in sentencing. We have repeatedly upheld the use of the preponderance standard in the context of advisory sentencing

a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Ziesman*, 409 F.3d 941, 956 (8th Cir. 2005). A district court must conduct an independent evaluation and determine whether the defendant committed perjury. *United States v. Garcia-Gonon*, 433 F.3d 587, 592 (8th Cir. 2006). "This determination is sufficient if the court makes a finding of obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* (internal quotations omitted). Whether Ramirez-Gomez committed perjury and in doing so obstructed justice is a factual finding, and we will reverse the district court's imposition of a sentencing enhancement only upon a showing of clear error. *Id.*

Ramirez-Gomez concedes that his testimony at Guel-Contreras's trial was not the result of confusion, but he argues that his contradictory statements to law enforcement officers were the result of confusion. He contends that on the night of his arrest his statement to law enforcement that Guel-Contreras was serving as a paid lookout for the drug deal was the result of confusing questioning by two different officers in both English and Spanish. He argues that his testimony at Guel-Contreras's trial denying his nephew's involvement in the drug deal was the accurate version of the events and not perjurious.

"The district court is free to believe all, some, or none of the witness's testimony." *United States v. Portillo*, 458 F.3d 828, 829 (8th Cir. 2006). Given the district court's superior position from which to judge credibility by having observed the testimony of both Agent Cantrell and Ramirez-Gomez, we believe that the district court did not clearly err in finding that Ramirez-Gomez committed perjury. The district court also made sufficient findings to support the obstruction of justice enhancement under § 3C1.1, which we therefore affirm.

---

guidelines. *E.g.*, *United States v. Garcia-Gonon*, 433 F.3d 587, 593 (8th Cir. 2006).

Ramirez-Gomez also challenges the district court's refusal to reduce his guideline range for acceptance of responsibility. The commentary to U.S.S.G. § 3E1.1 expressly provides that the reduction is not warranted where a defendant is assessed an enhancement for obstruction of justice pursuant to § 3C1.1, except in "extraordinary cases." U.S.S.G. § 3E1.1 app. n.4. We do not consider this to be an extraordinary case within the meaning of the commentary. Therefore, in light of our determination that the district court did not clearly err by giving the § 3C1.1 enhancement for obstruction of justice, we affirm the district court's denial of the § 3E1.1 reduction.

## III. CONCLUSION

For the forgoing reasons, we affirm Guel-Contreras's conviction and Ramirez-Gomez's sentence.